## NOBLE v. JONES.
### No. 888 Civil.

District Court, W. D. Oklahoma.
April 8, 1942.

Sullivan G. Ashby, of Ardmore, Okl., for plaintiff.

Charles E. Dierker, U. S. Atty., and Geo. H. McElroy, Asst. U. S. Atty., both of Oklahoma City, Okl. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and O. W. Hammonds, Sp. Assts. to Atty. Gen., on the brief), for defendant.

VAUGHT, District Judge.

The plaintiff purchased three ranches in Oklahoma as follows: Pontotoc Ranch, Johnston County, March 17, 1937; Goodman Ranch, Carter County, May 29, 1937; and Westheimer & Daube Ranch, Carter County, August 24, 1937. When said purchases were made there were no agreements between grantors and grantee as to who should pay the 1937 ad valorem taxes. Ad valorem taxes for the year 1937 were paid by the plaintiff to the proper tax collecting officials of the State of Oklahoma on such ranches as follows: Pontotoc Ranch, December 22, 1937, $399.57; Westheimer & Daube Ranch, December 27, 1937, $338.15; and Goodman Ranch, December 29, 1937, $417.35.

In his income tax return for the year 1937 made to the Collector of Internal Revenue, defendant herein, the plaintiff deducted from his gross income the ad valorem taxes paid, as above set out, in the total amount of $1,155.07. Plaintiff made his income tax return for the calendar year period of 1937 upon a cash receipts and disbursements basis.

The Commissioner of Internal Revenue redetermined the net income liability of the plaintiff for the calendar year 1937, disallowing the deduction of ad valorem taxes paid by the plaintiff and deducted from his return as aforesaid. Thereafter, upon the revenue agent's report of November 30, 1938, the said Commissioner made deficiency assessments against the plaintiff for the calendar year 1937, based upon his redetermination of said net income. Of the deficiency assessment so made, tax in the amount of $739.25, plus deficiency interest at the rate of six per cent. from March 15, 1938 to December 28, 1938, a total of $773.21, on that date paid by the plaintiff, is due to the disallowance of the deduction of ad valorem taxes.

Thereafter, on March 14, 1941, the plaintiff filed with the Commissioner a claim for refund of the amount of $773.21, asserting that such tax assessed and paid is excessive, erroneous and illegal. On July 24, 1941, the said Commissioner disallowed said claim. On October 23, 1941, this action was filed against the defendant praying judgment for $773.21, with interest at the rate of six per cent. per annum from December 28, 1938, until paid, the costs of this action, and such other and further relief as plaintiff may show himself to be entitled.

The above facts have been stipulated by the parties. The only issues are whether or not the plaintiff was entitled to the deduction of ad valorem taxes on the three ranches paid by him for the year 1937, and, consequently, whether or not the deficiency assessment of income tax was illegal and void.

The plaintiff contends that the deduction of ad valorem taxes paid by him was authorized by Section 23(c) of the 1936 Internal Revenue Act, 26 U.S.C.A. Int.Rev. Code § 23(c). The defendant contends that such tax deduction was properly disallowed because such ad valorem taxes were the liability of plaintiff's grantors rather than of the plaintiff, and consequently, such payment of taxes by the plaintiff "was a payment of cost or purchase price rather than 'taxes' as such." The defendant cites G.C.M. 18828, 1937-2 Cum.Bul. 87 as his authority for such position. It was promulgated pursuant to a request relative to the accrual date for federal income tax purposes of Oklahoma real and personal property taxes. After quoting at length therefrom, in his brief, the defendant states: "In view of subsequent reenactments of the legislation in question without change in later Revenue Acts, the administrative interpretation of the Act found in the foregoing G.C.M. is to be accepted as an adoption thereof by Congress. * * * The Commissioner of Internal

Revenue has consistently taken the position that the person upon whom liability rests for the state taxes, the grantor in this case, is the only one who can pay the tax and take the deduction."

The person liable for the tax is most certainly the only one entitled to take the deduction, but the grantors, in the conveyances under consideration, were not liable for the taxes. The above mentioned G.C.M. is not controlling under the situation here presented. It states:

"The position of the Bureau with respect to the accrual of property taxes is that ownership of property on the date as of which assessment is made by the State taxing authorities is the 'event' which determines the liability for property taxes."

\* \* \* \* \*

"It is held, therefore, that Oklahoma real and personal property taxes accrue as of January 1, \* \* \*."

The Commissioner apparently concluded that the tax liability was fixed as of January 1 each year, for the current calendar year, because Section 12581 O.S.1931, as amended by S.L.1933, Chap. 115, Sec. 1, 68 Okl.St.Ann. § 81, provides: "All taxable property shall be listed and assessed each year \* \* \*, in the name of the owner thereof, on the first day of January of each year, \* \* \*." But the Commissioner failed to consider the entire structure of the taxing procedure. The "event" of the listing and assessing of property to the owner thereof on January 1 each year does not fix the liability for the payment of the tax as of that date. The defendant cites, as authority for his position, Board of Com'rs of Comanche County v. Central Baptist Church, 136 Okl. 99, 276 P. 726, 63 A.L.R. 1327. That case is not in point. It holds that the status of ownership on January 1 determines whether or not the property is exempt from ad valorem taxation for that year. It has nothing to do with the determination of when the state ad valorem tax liability accrues, in order to ascertain who is entitled to the deduction of such state tax from gross income under the federal income tax law.

 The lands here involved became the property of the plaintiff on dates between March 17 and August 24, 1937. It is true that the county assessor placed the assessed value upon said respective lands as of January 1, 1937, pursuant to his direction in the above mentioned Oklahoma statute.

Such state statute is procedural, guiding the county assessor in the performance of his duties in making up the assessment rolls. It is not the section of the Oklahoma statute which governs or determines who is liable for the payment of the tax.

The county board of equalization holds sessions commencing the fourth Monday in April for the purpose of equalizing, correcting and adjusting the assessment rolls prepared by the county assessor as aforesaid, and which he must have delivered to said board by that date. The county board of equalization is also the county excise board. Such excise board meets on the last Saturday in July, determines the tax levies and certifies the rolls back to the county assessor who extends the taxes and delivers the tax rolls to the county treasurer, not later than October 1. Upon that date such taxes become due. 68 Okl.St. Ann. § 351. They are made a perpetual lien upon the respective real properties against which they are levied. 68 Okl.St. Ann. § 353.

With this panorama of the taxing procedure in view, it should be apparent that the Commissioner was in error in holding that the only party entitled to a deduction of Oklahoma ad valorem taxes from his gross income, in making his federal income tax return, would be the party who owned the real estate on January 1.

Section 12714, O.S.1931, 68 Okl.St.Ann. § 211, clearly determines who is liable for the payment of the ad valorem taxes in the case here involved, as follows: "As between grantor and grantee of any land where there is no express agreement as to who shall pay the taxes that may be assessed thereon, taxes on any real estate shall become a lien on such real estate on the 15th day of October of each year, and if such real estate is conveyed after said date the grantor shall pay such taxes, and if conveyed on or prior to October 15th of such year the grantee shall pay such taxes." This section was repealed by the 1941 Legislature, but by the repealing Act, S.B. No. 271, approved May 23, 1941; 1941 S.L. c. 1a, sec. 5, 68 Okl.St.Ann. § 15.5, it was reenacted with no changes except "the 15th day of October" was changed to "the 1st day of October."

 This state statute definitely announces when the taxes become a lien upon the real estate, and when they are the liability of the grantor. The Oklahoma Su-

preme Court, in Johnston v. Mohrabacker, 118 Okl. 244, 247 P. 389, 390, has construed such statute by reversing a judgment of the trial court which attempted to relieve the grantor of the tax liability in connection with a contract of sale and purchase consummated on October 16 which provided that the property should be conveyed free and clear of all encumbrances. The court said: "The plaintiff in error held an enforceable contract against the owner, entered into after the 15th day of October, and was entitled to a conveyance of the premises * * *, free and clear of all incumbrances, and tax."

It is apparent that G.C.M. 18828, 1937–2 Cum.Bul. 87, accepted by the defendant as controlling, has been reversed in effect by subsequent decisions construing the statutes of other states, with relation to the section of the Internal Revenue Act here under consideration.

The Circuit Court of Appeals, Third Circuit, in Commissioner of Internal Revenue v. Coward, 1940, 110 F.2d 725, 726, 128 A.L.R. 764, had a situation before it very similar to the one here involved. A comparison of the two will be made. The New Jersey statute in that case, N.J.S.A. 54:4–1, provided that all property is "assessed to the owner thereof with reference to the amount" on October 1 each year; in Oklahoma the assessment is made as of January 1. In New Jersey the tax list is delivered to the collector on April 1 instead of October 1 as in Oklahoma. In the New Jersey case the income taxpayer purchased one parcel of land October 16, 1933 and the other on January 8, 1934. The opinion states:

"Respondent paid each instalment of the 1934 tax on her properties without delay. If she had not done so, a lien for them would have attached on December 1, 1934.

"* * *, the Commissioner deduces that respondent, who keeps her books on the cash basis, is not entitled to deduct from her gross income for 1934 the real estate taxes paid by her in 1934. As he reasons, the sums paid were not taxes at all, but, rather part of the cost of the two parcels."

Thus the case is almost identical with the one before us. The Circuit Court held that the payment to the New Jersey tax collector in 1934 is clearly one of "taxes." It distinguished the cases which hold that payment of taxes are "capital expenditures" as covering just two kinds of situations, first, where the payment of the tax is by express contract a part of the consideration for the property, and, second, where the tax lien has *already attached*. Discussing the situation, the court said:

"Respondent's two parcels were, in theory, already 'liable' for the 1934 taxes when she purchased them. That is to say, nothing which occurred after the assessment of October 1, 1933, could alter the fact that the land itself must ultimately yield those taxes either directly through the eventual foreclosure of a tax lien, or indirectly through the medium of its then or subsequent owner's pocketbook. * * * The presence of this liability in rem may well afford a basis for 'accruing' the tax in the accounting sense. But does its preexistence deprive the purchaser who later discharges it of his income tax deduction?

"We think not. * * *"

In the case at bar, as well as in the New Jersey case, the lands were purchased *after* the assessment but *before* the taxes were payable or the lien had attached. In neither case was there any liability whatsoever upon the seller to pay the state tax. The state tax in each case was primarily an obligation or charge against the land, and if not paid, the land would be sold to satisfy the tax lien, to the loss of the purchaser (the income taxpayer) without recourse against the seller. Therefore, the state tax was the liability of the purchaser.

The Eighth Circuit Court of Appeals, in Helvering v. Schimmel, 1940, 114 F.2d 554, held, quoting from the second headnote: "Taxpayer was entitled to deduct from his income for 1932 for income tax purposes city real estate taxes paid in Omaha, Nebraska, in 1932 when they *accrued and became a lien* on the realty, rather than in 1931 when they were *levied and assessed* * * *." (Emphasis supplied.)

The plaintiff was legally entitled to the deduction of $1,155.07 from his gross income for 1937, for federal income tax purposes, and the deficiency assessment of income tax made against him for said year was error.

Judgment shall be awarded the plaintiff against the defendant for $773.21, together with interest thereon at the rate of six per cent. per annum from December 28, 1938, until paid, and for his costs herein expended. Findings of fact, conclusions of law, and a form of judgment consistent with this opinion may be submitted. Exceptions are allowed.