## CITY STATE BANK OF OKLAHOMA CITY v. STONE.

No. 6625—Opinion Filed June 27, 1916.

(158 Pac. 1168.)

**1. Time—Tax—"Year."**

By the provisions of our Constitution and statutes, the fiscal year begins July 1st, and the term, "1911 taxes," means the taxes levied for the fiscal year beginning July 1, 1911, and not the tax that may have been levied for the calendar year 1911.

**2.—Same—Contract to Pay Taxes.**

Under contract which provides, "We hereby guarantee to pay the 1911 taxes on same up to and including September 19, 1911; that is to say, we are to pay the pro rata portion of same up to and including that date," the guarantors are liable for their proportionate share of the taxes levied for the fiscal year beginning July 1, 1911, in the ratio that 2 months and 19 days bears to 12 months.

**3. Damages—Contract to Pay Taxes.**

Where such a contract provides that upon failure of the guarantors to pay their share of the taxes the guarantee is authorized to pay same and that he will, on demand, be reimbursed for such proportion of the full amount paid by him, the guarantors are liable for their proportionate share of penalty accrued at the time the guarantee pays such taxes, upon their failure to tender or pay their proportionate share.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County: Geo. W. Clark, Judge.

Action by G. B. Stone against the City State Bank of Oklahoma City. Judgment for plaintiff, and defendant brings error. Reversed, with directions.

Everest & Campbell, for plaintiff in error.

Herbert M. Peck, for defendant in error.

Opinion by RUMMONS, C. This action was commenced in the district court of Oklahoma county by an agreed controversy submitted for the determination of the court. The question in controversy arises upon the interpretation of the following provision of a contract between the plaintiff and defendant:

"We hereby guarantee to pay the 1911 taxes on same up to and including September 19, 1911; that is to say, that we are to pay the pro rata portion of same up to and including that date, and in the event we fail or refuse to pay these taxes we agree that G. B. Stone is authorized to pay same, and we will on demand reimburse him for the proportion above indicated of the full amount paid by him."

This contract was entered into on January 31, 1912. The defendant did not pay the taxes referred to and plaintiff, on March 31, 1913, paid such taxes, which amount to the sum of $611.50, of which sum $126.32 was penalty accrued. Said taxes could have been paid without penalty up to the 15th day of June, 1912.

It is contended for plaintiff in error that it is only required to reimburse defendant in error for the proportion of the sum paid, less penalty accrued, which 2 months and 19 days bears to 12 months. On the other hand, defendant in error insists the reimbursement should be in the same proportion to the amount paid by him that 8 months and 19 days bears to 12 months. The trial court agreed with defendant in error.

We think the trial court erred in its construction of this contract. Section 1, article 10, Constitution of the state of Oklahoma, reads as follows:

"The fiscal year shall commence on the first day of July in each year, unless otherwise provided by law."

Section 2, article 10, Constitution of this state, is as follows:

"The Legislature shall provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state for each fiscal year."

Section 7374, Revised Laws 1910, reads as follows:

"There is hereby levied annually an ad valorem tax upon all property in this state

which may be subject to taxation upon such basis, a tax sufficient in addition to the income from all other sources, to pay the expenses of the state government for each fiscal year ending on the 30th day of June, and to pay the deficiency, if any, for the year next preceding."

Section 7378, Revised Laws 1910, provides that the boards of county commissioners, the mayor and council of each city, the board of trustees of each incorporated town, the directors of each township, the board of education in each city, and the directors of each school district shall meet on the first Monday in July and respectively make out an itemized statement of the fiscal condition of their respective municipalities and of the estimated amount required for the expenses of the ensuing fiscal year. Upon these estimates a tax levy is made by the excise board of the county. Chapter 120 of the Session Laws of 1911 provides:

"One-half of all taxes levied upon an ad valorem basis, for the fiscal year ending June 30, 1912, and for each fiscal year thereafter, shall become due on the 1st day of November; and, unless said one-half of the taxes so levied shall be paid on or before the 1st day of January, the entire tax levied for such fiscal year shall become delinquent on said date. If the first half of the taxes, levied upon an ad valorem basis for any such fiscal year, shall have been paid on or before the 1st day of December, the second half shall become delinquent on the 15th day of June thereafter."

From these provisions of the Constitution and the statutes it appears that as to revenue matters the year begins upon the 1st day of July and ends on the 30th day of June following, and it is contended by plaintiff in error that the term, "1911 taxes," used in this contract, had reference to the taxes levied for the fiscal year beginning on July 1, 1911. On the other hand it is contended by defendant in error that, inasmuch as our statute provides the word, "year," when used in a contract, shall be construed to mean a calendar year, the contract should be interpreted to mean the taxes which accrued at any time during the year 1911. The argument of defendant in error fails in that the contract does not provide that the plaintiff in error shall pay the taxes for the year of 1911, but guarantees the payment of the "1911 taxes," up to and including September 19, 1911.

The agreed statement of facts does not disclose, but it is presumed, that the taxes levied for the fiscal year ending June 30, 1911, had been paid; therefore, up to July 1, 1911, there were no taxes which were due or could be paid upon this property. The

term, "1911 taxes," is not uncertain or indefinite and it has a well-understood meaning. It refers to the taxes levied and falling due in the year 1911. Under the provisions of law in force at the time of this contract, the taxes levied for each year became due on the first day of November of that year, but the payment of one-half thereof could be postponed by paying one-half of the taxes on or before the first day of January of the succeeding year.

The only indefiniteness in this contract, it occurs to us, is the meaning of the term, "up to and including September 19, 1911"; but this has been solved by the agreement between counsel for plaintiff in error and defendant in error that it means the proportionate part of the taxes up to that date. That being the case, the plaintiff in error obligated itself to pay the proportion of the 1911 taxes from the time they were levied up to September 19, 1911, which would be for 2 months and 19 days.

Even if the word "year" had been used in this contract, the contention of defendant in error must fail for the reason that every contract must be interpreted in connection with the subject-matter thereof and the statute definition of the word, "year," meaning calendar year, must yield to the meaning of such words taken in connection with the subject-matter of the contract. Section 957, Revised Laws 1910; State ex rel. Buchanan v. Jennings, 68 S. C. 411, 47 S. E. 683; Williams v. Bagnelle, 138 Cal. 699, 72 Pac. 408. The subject-matter of this contract being the payment of taxes, the word "year" must be construed to mean the fiscal year for which such taxes were levied. It seems clear to us that the plaintiff in error, having obligated itself to pay the proportion of the taxes for the fiscal year beginning July 1, 1911, up to and including September 9, 1911, it can only be charged with the proportionate amount of the taxes levied from the beginning of the fiscal year for which such taxes were levied.

We find no merit in the contention of plaintiff in error that it should not be charged with any part of the penalty paid by the defendant in error. The defendant in error was entitled to rely upon its guaranty of the payment of these taxes and was not required to pay the same before they became delinquent; even after such taxes became delinquent he still was entitled to rely upon such guaranty and expect the plaintiff in error to pay these taxes as it had agreed to do. He did not in the agreement obligate himself to pay any part of the taxes, and he could not have paid his proportion until plaintiff in error contributed its proportion.

The contract itself further relieves this matter from any doubt, for the reason that it provides:

"In the event we fail or refuse to pay these taxes we agree that G. B. Stone is authorized to pay same, and we will on demand reimburse him for the proportion above indicated of the full amount paid by him."

This agreement authorizes defendant in error, upon the failure or refusal of plaintiff in error, to pay the taxes at any time and promises that plaintiff in error will reimburse him for its proportion of the full amount paid by him. Plaintiff in error could have escaped all penalty by tendering to defendant in error its proportion of the 1911 taxes at any time before June 15, 1912, and it cannot charge penalty for its delinquency to the defendant in error. The defendant in error is entitled to be reimbursed for the proportion of the full amount of taxes paid by him for the year 1911, including the penalty, in the ratio that 2 months and 19 days bears to 12 months.

The judgment of the trial court should be reversed and the cause remanded, with directions to the trial court to enter judgment for the defendant in error against the plaintiff in error, in accordance with this opinion.

By the Court: It is so ordered.